ISAAC AND JOSEPH M. ROGERS vs. HENRY SCARFF AND OTHERS.—*June* 1845.

In 1828, a trustee, under decree, made a sale of land to *H*, who he reported as the purchaser, and the sale was ratified. The purchase money was in fact paid by *S*, who went into possession, and so remained. *H* was his agent, and bought for him. In 1834, *H* executed a lease of 14 acres of land to *W*, for the purpose of raising iron ore, and agreed, that should the ore run out on the 14 acres, *W* should have four more, whenever he saw proper, adjoining the same. The ore running out, *W* claimed to have the four acres on the land in the possession of *S*, adjoining the leased premises. HELD : that *S*. had an equitable estate in the land in controversy; that *W* had constructive notice sufficient to put him on enquiry ; and that *H* could not convey to him, or his assigns, any estate in the adjoining part claimed.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 27th April 1840, by the appellants, and alleged, that on or about the 6th October 1834, one *John Withers* being about to establish a furnace for making iron on *Deer* creek, near a place called the *Rocks of Deer Creek*, with a view to obtain a supply of iron ore for said furnace, entered into a contract with one *Thomas Hope*, who was anxious to have a furnace erected in said county, by which it was agreed, between the said *Hope* and *Withers*, that the latter should have the exclusive right of digging and taking away iron ore, and from fourteen acres of land, for the period of one hundred years, for which said *Withers* was to pay the yearly rent of fifty dollars. It was also agreed between said parties, that in the event of a failure of iron ore on the said fourteen acres, the said *W.* was to have any four acres of land adjoining the said fourteen acres, which the said *H.* then had, at the same rate of rent of compensation, for the purpose of digging, raising and procuring iron ore; and it was further agreed, between the said *H.* and *W.*, that the latter should have the right to take, at his election, all their iron on the lands of said *H.*, at the same rate of compensation, provided the said eighteen acres should be exhausted at any time within the period of one hundred years, the term of said lease and agreement; that the said agreement or lease, was reduced to writing, and signed, sealed and duly acknowledged by the said *H.*, and

and duly recorded; that after the said agreement was executed, between the said *H.* and said *W.*, to wit, on the 8th October 1834, the said *W.* not having sufficient capital to erect and carry on his contemplated furnace, induced your orators to become partners in the same; and also in a forge then erected at the same place; and the said *furnace* was to be erected, and sold and transferred to your orators, two undivided third parts of the said forge and site for said furnace, and the water power and lands appertaining to the same; and also assigned on said last mentioned day, to your orators, two undivided third parts of said lease or agreement, so made as aforesaid, with said *Hope*, and all the lands, mines, rights, privileges and property, embraced within the provisions of the same; that afterwards, the said *W.* sold and transferred all his remaining interest in said iron works to your orators, and on the 28th March 1835, the said *W.* assigned to your orators the remaining undivided third part of the interest and premises, and all the rights and privileges he acquired under and by virtue of the said lease or agreement, with said *Hope*.

And your orators further shew, that relying on the lands mentioned in said lease, as well the adjoining lands of the said *H.*, as the fourteen acres specifically described to furnish a supply of iron ore, they proceeded to erect, at great expense, a furnace to make iron, and to provide all the necessary teams, fixtures and machinery requisite to the working and carrying on of a furnace; and also proceeded to dig and raise iron ore on the said fourteen acres of land, specifically described as aforesaid. But your orators state and aver, that from the examinations they have made, and from all the means of judging within their reach, they feel assured and convinced that there is no iron ore on a considerable portion of the said fourteen acres, sufficiently near the surface of the land to be accessible, at any expense, that it would be justifiable to incur in procuring iron ore; that they have now been working the mine on the said fourteen acres for about four years, and have so far been able to procure from the same a sufficient quantity of iron ore to supply their said furnace, but they have apprehensions that the iron ore on said fourteen acres will run out. In fact your

orators state, that the iron ore, on said fourteen acres may be exhausted in a very short time, but they cannot so state positively, because from the nature of the thing, it is impossible to determine with accuracy how much mineral of that description may be concealed in the said fourteen acres, still from all the means of judging within their power, there is good reason to apprehend that a full and continuous supply for their said furnace, cannot be afforded by the said fourteen acres, and if the supply of iron ore should fail, your orators would lose the large amount of capital they have invested in their said iron works, as it would not be practicable, as your orators believe, to procure iron ore for their iron works, from any other place than the lands comprised within the terms of said lease or agreement, there being in fact no sufficient quantity of ore at any place within a practicable distance, within the knowledge of your orators; that with a view to avoid delay, in giving to the said *H.*, or those claiming under him, the benefit of the rent for the other portions of land, besides the fourteen acres comprised within the said lease, they have offered, and requested the said *H.* to lay off, according to the terms of said lease, the four acres mentioned in said lease, to adjoin the said fourteen acres; and also to lay off the lands of the said *H.*, at the time of the execution of said lease, sixteen acres in addition to the said four acres, and have offered to pay rent for the same, according to the terms and conditions of said lease or agreement. But the said *H.* refuses to do so, and now one *Henry Scarff* pretends to claim to own, under a contract with said *H.*, a part of the land embraced in said lease or agreement, of which pretended claim, if it existed at the the time of the execution of said lease or agreement, or at the time of the assignment of the same to your orators, no notice whatever was communicated to your orators, nor had they any notice whatever of the existence of any such pretended claim; that the said *Henry Scarff* pretending as aforesaid, to claim a part of said lands, under and through the said *H.*, not only refuses to permit your orators to dig for, and raise iron ore on the lands embraced by said lease or agreement, except the fourteen acres specifically described, but has actually given permission to

*Christopher Geiger, Philip A. Small* and *Samuel Small,* to raise iron ore on lands which belonged to the said *H.* at the time of making and assigning of said lease and agreement as aforesaid, and which adjoins the said fourteen acres, described as aforesaid; that your orators gave notice of their claim to said iron ore to the said *Henry Scarff,* and to the said *Christopher Geiger, Philip A. Small* and *Samuel Small,* but in defiance of said notice, and in prejudice of the rights of your orators, the said *H. S.,* and the said *C. G., P. A. S.,* and *S. S.,* are digging and raising iron ore on the lands adjoining said fourteen acres described as aforesaid, and which belonged to said *H.* at the time of the execution and assignment of said lease; and your orators are apprehensive that the said *S.,* and *C. G., P. A. S.,* and *S. S.,* will take from said lands all the iron ore which can by any practicable means be obtained therefrom, unless they are restrained from doing so by a writ of injunction, and that by so digging and removing said iron ore, they will do irreparable injury to your orators; that the said *H., S., C. G., P. A. S.,* and *S. S.,* sometimes pretend that the lands adjoining the said fourteen acres, described as aforesaid, did not belong to the said *H.* at the time of the execution and assignment of said lease or agreement, and at other times pretend that the said lease or agreement did not confer any right or interest in the iron ore, or in any other lands, except the fourteen acres aforesaid, all which pretenses your orators aver, are wholly unfounded; and they aver, that by the land records of said county it appears, that the said *H.,* at the time of the execution and assignment of said agreement, was seized and entitled to two contiguous tracts of land, situated in said county, the one called *"Hope's Pleasant Hills,"* and the other the *" Widow's Care;"* and that the lease embraces within its provisions, all the iron ore on the said two tracts of land; and further, that the land in which the said *S.,* and the said *C. G., P. A. S.,* and *S. S.,* are now digging iron ore, is a part of the tract called the *" Widow's Care,"* which belonged as aforesaid, to the said *H.,* at the time of the execution of the said lease, and the said assignments thereof. Prayer, that the said defendants lay off, or permit your orators to lay off, twenty acres of

land of the said two tracts, and that they execute a lease of the same, upon the terms and conditions specified in the said lease or agreement; for an injunction to surcease from digging any iron ore on the said tracts of land, called *"Hope's Pleasant Hills,"* and *"Widow's Care;"* and from removing any iron ore from the same, until, &c.; and for subpœna and general relief, &c.

The plaintiffs exhibited with their bill:

"Articles of agreement made and concluded the 6th October 1834, between *Thomas Hope, Sr.,* of, &c., and *John Withers,* of &c. The said *T. H.,* for the consideration hereinafter mentioned, doth for himself, his heirs and assigns, lease unto the said *J. W.,* his heirs or assigns, the exclusive right of all the iron ore within the following lines, beginning at, &c., being a part of *"Hope's Pleasant Hills,"* and containing fourteen acres, more or less, for the term of one hundred years, the said term to commence when the said *J. W.,* his heirs or assigns, first commences hauling said ore; the said *T. H.* doth allow free access to and from said ore, with free liberty of taking the same away, the most convenient way leading to the road that leads to the furnace, which *Hope* may direct. The said *J. W.,* his heirs or assigns, doth agree to pay *T. H.,* his heirs or assigns, the sum of fifty dollars per year for the said ore and privileges, to be paid at the end of each year. It is further agreed upon, by the parties above mentioned, that should the said ore not prove good, the said *J. W.,* his heirs or assigns, are at liberty to discontinue raising and hauling at any time; and also, the lease is then to stop until the said *J. W.,* his heirs or assigns, see proper to commence again. It is further agreed, that should the said *W.,* his heirs or assigns, discontinue raising said ore in the first year, they are to fill up the holes, and level the ground. The said *T. H.* further agrees, that the said *J. W.* may build a house for the accommodation of the miners, on the before mentioned lot; and it is further agreed, that should there be any lime stone in the said lot, the said *T. H.* is to have free liberty of quarrying and taking the same all away, but not interfering with raising said ore; and it is further agreed upon, by the said *T. H.,* his heirs or assigns, that should the ore run out

on the before mentioned fourteen acres, the said *J. W.*, his heirs or assigns, is to have four acres more, at the same rate, whenever he sees proper, adjoining the said fourteen acres. It is further agreed upon, by the said *T. H ,* his heirs or assigns, that the said *J. W.,* his heirs or assigns, are to have the refuse of all the iron ore on the said *Hope's* land, at the rate before mentioned, provided the ore should run out in the before mentioned *eighteen* acres. For the true performance, &c.

THOMAS HOPE,        (Seal.)

JOHN WITHERS,        (Seal.)"

"It is further agreed by the said *Withers*, that should the ore run out on the above mentioned eighteen acres, he is to pay at the rate of thirty dollars per acre for all the land he digs and covers, not including the above mentioned eighteen acres on said *Hope's* farm. It is further agreed, the said *Hope* is to have the privilege of farming said land, by not interfering with the raising of said ore.

THOS. HOPE,        (Seal.)

JOHN WITHERS,        (Seal.)"

This lease was acknowledged and recorded.

By indenture of 8th Oct. 1834, *J. W.* assigned two-thirds of his interest, under the lease from *T. H.* to the complainants. This indenture was also acknowledged and recorded; on the 28th March 1835, *J. W.* assigned his remaining one-third of said lease to complainants, also acknowledged, &c.

On this bill and its exhibits an injunction was ordered.

The answer of *Henry Scarff* admitted the exhibits filed with the bill, and alleged, that the complainants have not, as yet, erected upon said fourteen acres of land so leased by the said *H.* to *W.*, and assigned by *W.* to them, any furnace for the purpose of making iron; but he admits, that they have a furnace on *Deer* creek, about seven miles from said lands, and he admits, that the complainants have raised a considerable quantity of iron ore from said lot so leased by said *H.*, and used said ore in their furnace, but this defendant is not apprised of the quantity of ore so raised by the complainants, and this defendant does not know of any deficiency in the quantity of said ore still in the ground on said lot, and neither admits or denies that there is, or is likely to be any such deficiency, but leaves

the complainants to the proof thereof, if they deem it important to them. That he has heard, and admits it to be true, that the complainants have applied to the said *T. H.* for a lease of more lands, for the purpose of raising iron ore, but this defendant is not aware, and does not admit that the said *Hope* refused to make a lease to them of any of his lands. And this defendant, further answering, says, a certain *John Robinson* acting as trustee under a decree of *Harford* county court in equity, on the 12th November 1827, set up and exposed at public sale all the lands and premises in the proceedings in that case mentioned, being parts of several tracts of land lying in *Harford* county aforesaid, called *"Widow's Care," "Isles of Capree,"* and *"Hope's Pleasant Hills,"* containing 172 acres; and that the said *Thomas Hope,* for and as the agent of, and by the direction of this defendant, purchased the said lands and premises at the said sale for this defendant. And this defendant avers, that he hath paid the purchase money for the said lands and premises for himself, and with his own proper moneys; and he avers, that shortly after he made said purchase, and long before the said contract of lease hereinbefore mentioned, was made between the said *Hope* and *Withers,* he, this defendant went into possession of the lands and premises so bought by him from the said *John Robinson,* trustee as aforesaid, and he says that he hath ever since been, and still is, the sole owner and possessor thereof; but this defendant says, that he admits that he was not returned as the purchaser of said lands by the said trustee; and he admits that the said *T. H.* was returned as purchaser thereof, but he says that the said trustee hath never executed any deed therefor, either to this defendant or to the said *T. H.;* and this defendant denies that the said *T. H.* hath or ever had, any right or title, or interest or estate in the said lands and premises, or any part thereof. And this defendant further says, that the said *T. H.* is the owner and possessor of lands bounding on the estate so owned and possessed by this defendant, and that said *Hope* was the owner and possessor of such lands before and at the time he made said contract with said *W.;* and he admits that the said land so leased to the said *W.* by the said *H.,* adjoins and binds upon the lands so owned

and then occupied by this defendant as aforesaid; and this defendant denies that he ever pretended to own, or have any interest in the lands embraced in said lease from *Hope* to *Withers.* And this defendant further answering, says, that the complainants did pretend that the lands and premises so belonging to and possessed by this defendant were lands embraced within the provisions of said lease, and the said complainants did claim to have a new lease for a part of this defendant's estate upon the pretenses aforesaid; and this defendant says that about two years ago the complainants wanted to lease this defendant's lands from him, but that they could not agree upon the terms of a lease.    And he admits that he refused to let the said complainants enter upon said lands as he had a right to do; and he admits that he refused to execute any lease therefor to the said complainants, unless the complainants would agree to the terms proposed by this defendant.    And this defendant further says, that he did lease a part of his own lands unto the said *Christopher Geiger*, who acted for himself and for *Philip A. Small*, his co-partners, with permission to dig thereon for iron ore; and he admits that his said lessees did commence work on his said lands under his lease to them as aforesaid, and he says that his said lessees were stopped in their said work by the injunction issued, &c.

The answer of *Thomas Hope* also admitted the exhibits filed with the bill, and that the complainants have worked the said mines or ore bank, and have raised a considerable quantity of iron ore from out of the said lands so leased by him to the said *W.;* and this defendant says that there is no well founded reason for supposing that there is any deficiency of iron ore in said mines, and that said mines have not been exhausted. That on or about the 12th November 1827, a certain *John Robinson*, acting as trustee under the authority of a decree of *Harford* county court in equity, set up and exposed at public sale the lands and premises in the proceedings in that cause mentioned, being parts of several tracts of land situate and lying in *Harford* county, called "*Widow's Cure*," "*Isles of Capree*," and "*Hope's Pleasant Hills*," containing, &c., which lands adjoin the lot of ground, so afterwards leased by

this defendant as aforesaid, to said *J. W.* And this defendant further says, that at the request, and for the use and benefit of the said *Henry Scarff*, this defendant attended said sale, and purchased said lands so offered by the said *Robinson*, for the said *Henry Scarff*. And this defendant says, that shortly afterwards, and before this defendant made said contract with the said *Withers*, the said *Scarff* went into possession of the said lands so bought by this defendant for said *Scarff*, as aforesaid; and he says that he has understood and believes, that said *Scarff* has paid for said lands. And this defendant admits that he was returned by the said *Robinson* as the purchaser of said lands, but he says that he never claimed any interest thereon, or any right or title thereto, except that at one time a verbal agreement between said *Scarff* and this respondent, for a purchase by this respondent from said *Scarff* of a part of said lands, but not that containing iron ore, and said agreement was never perfected. That he always has been and still is willing to comply with his said contract made with said *W.*; but he admits that he has refused to make any lease of said *Scarff's* land to the said complainants. That said *W.*, before and at the time when said lease was made to said *W.*, well knew that the said *Scarff* was the sole owner and possessor of the lands now claimed by said complainants, and in controversy in this cause; and he says that he verily believes that the complainants, before and at the time when they so bought out the said *W.*, well knew that the said *Scarff* was the sole owner and possessor of the lands now claimed by the complainants, and in controversy in this cause. And this defendant says that he has heard, and believes it to be true, that the said *Scarff* has contracted with the defendants, *Geiger* and *Smalls*, for a lease of a part of his, the said *Scarff's* lands, for the purposes in the bill mentioned; and he admits that said *Geiger* and *Smalls* were at work on said lands, raising iron ore, when stopped by the injunction in this case, &c.

The answer of *Christopher Geiger*, agent and acting partner of *Philip A. Small and Samuel Small*, after admitting the contracts filed with the bill, says, that he has been informed and believes, and charges it to be true, that long before, and at the

time when said contract was made between the said *H.* and *W.*, the said *H.* and *H. S.* were the owners and possessors of adjoining lands in *Harford* county, aforesaid, each of them holding his estate separate and distinct from the other, and each holding his said estate without the other having any right, title, or interest therein. And this defendant, as acting partner, is further informed, and charges to be true, that the said *Henry Scarff* hath ever since been, and still is, in the sole and exclusive possession and enjoyment of this said estate. That on or about the 25th February 1840, he made a contract and agreement with the said *H. S.*, to lease from him fifteen acres of land, containing iron ore, and adjoining the ore bank of the said complainants, but lying altogether within the lines of said lands so owned and possessed by the said *H. S.*, and which had been so owned and possessed by him before and ever since the said lease from *H.* to *W.* And this defendant admits, that he did commence work upon the lands so leased to them as aforesaid, by raising iron ore from out of said lands as they had a right to do; and he says that they were so at work when they were, by the said complainants, wrongfully stopped by the injunction issued in this cause. And these defendants admit, that they refused to permit the said complainants to work the mines upon the lands so leased by these defendants as aforesaid; and they say that they have no knowledge of the other matters enquired of in said bill, &c.

The answer of *P. A.* and *S. Small* admitted the contract of *Geiger* in 1840, and denied all personal knowledge of the other matters.

After proof taken, at December term 1843, BLAND, Chancellor, dissolved the injunction and dismissed the bill, on the ground that there was no evidence which showed, that the agreement of 6th October 1834 was intended to embrace any land, claimed by the defendant, *Henry Scarff.*

From this decree the complainants appealed.

The cause was argued before ARCHER, C. J., SPENCE and MARTIN, J.

By OTHO SCOTT and J. JOHNSON for the appellants, and By T. P. SCOTT for the appellees.

SPENCE, J., delivered the opinion of this court.

The record in this case discloses the following facts, viz: that the lease or agreement, under which this controversy originated, between *Thomas Hope* and *John Withers*, was executed on the 6th day of October, 1834. It contains a stipulation, that in the event, the ore on the fourteen acres of land, described in the lease, should run out, *Withers* was to have four acres more at the same rate, whenever he saw proper, adjoining the fourteen acres mentioned in the lease.

It also appears, by the report of *John Robinson*, who was trustee under a decree of *Harford* county court to sell the land in controversy, that he did make sale thereof some time in the year 1828. His report was made to *Harford* county court, at March term 1828.

The trustee, in his report, returned *Thomas Hope* the purchaser of the land so by him sold. But we think the evidence establishes, beyond controversy, that *Thomas Hope* purchased the land for *Henry Scarff*, as his agent; that *Scarff* paid all the purchase money for the land; went immediately into possession, and has, from that time to the present, continued in possession, exercising all the rights of ownership, incident to an absolute estate. Let it be remembered, that this possession, payment of purchase money, and exercise of ownership, commenced in the year 1828. The lease from *Hope* to *Withers*, was made in 1834. We are entirely at fault to find a ground for the argument, that *Withers* was a lessee for valuable consideration, without notice. Can there remain a doubt, after the proof of the above recited facts, that he, *Withers*, had, if not actual, at least constructive notice, sufficient to put him upon enquiry?

In conclusion, we are of opinion, that at the date of the lease between *Hope* and *Withers*, in 1834, *Henry Scarff* had the equitable estate in the land in controversy, and that *Thomas Hope* did not, and could not, convey any interest or estate in or to the same.

DECREE AFFIRMED WITH COSTS.